IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL GRANT,** : | |
| **Plaintiff,** : | |
| : | **Civil Action** |
| v. : | **No. 20-735** |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
| **Defendants.** : | |

# ORDER

AND NOW, this _____ day of _____, 2021, upon consideration of the Motion to Dismiss of Defendant City of Philadelphia, it is **HEREBY ORDERED** that the Motion is **GRANTED**. It is **FURTHER ORDERED** that Plaintiff's claims against the City of Philadelphia are **DISMISSED.**

BY THE COURT:

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL GRANT,** : | |
| **Plaintiff,** : | |
| : | Civil Action |
| v. : | No. 20-735 |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
| **Defendants.** : | |

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant City of Philadelphia (the "City") hereby files this Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this motion, the City incorporates the attached Memorandum of Law. The City respectfully requests that this Court dismiss all claims against it as set forth below.

Date: February 19, 2021                    Respectfully submitted,

*/s/ Jonathan Cooper*
Jonathan Cooper
Deputy City Solicitor
Pa. Attorney ID No. 316374
City of Philadelphia Law Dep't
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5448 (phone)
jonathan.cooper@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL GRANT,**      **Plaintiff,** <br><br> v. <br><br> **CITY OF PHILADELPHIA, et al.,**      **Defendants.** | **Civil Action** <br> **No. 20-735** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Plaintiff Michael Grant – who notes in his Amended Complaint that he also goes by the name "Philly Jesus" – has filed a complaint against, *inter alios*, the City of Philadelphia (the "City"), in connection with his allegedly being handcuffed and given a $50.00 citation while preaching in Love Park on December 21, 2019.  Because Plaintiff cannot attribute his handcuffing or citation to any policy, practice, or custom of the City or the Philadelphia Police Department ("PPD"), the City should be dismissed from this lawsuit.

I. **BACKGROUND AND CASE SUMMARY**

On February 7, 2020, Plaintiff filed his initial complaint in this matter (Doc. No. 2).  After adding a second attorney to his legal team, Plaintiff filed his First Amended Complaint on February 5, 2021 (Doc. No. 21).

In his Amended Complaint, Plaintiff alleges that on or about December 21, 2019, he was speaking to people, handing out materials, and standing next to a sign that he had displayed in Love Park, Philadelphia.  But despite engaging in what Plaintiff alleges were only lawful actions, Plaintiff contends he was handcuffed by two Philadelphia police officers for thirty minutes and

given a $50.00 citation. *See* Amended Cmplt. at ¶¶ 16-24.[1] Plaintiff has now sued the police officers who handcuffed and cited him, asserting claims for False Arrest (Count I), First Amendment violations (Count II), First Amendment Retaliation (Count III), and Declaratory Judgment (Count IV).

But Plaintiff does not stop there. Beyond suing the officers themselves, Plaintiff attributes his handcuffing and $50.00 citation to a "major problem with training on the First Amendment of the Philadelphia Police, in that the only training received is Directive 3.12 and other materials but little or no other specific guidelines to help police make decisions what to do when there is protected expressive activity going on in public forum areas in Philadelphia." Amended Cmplt. at ¶ 92. Plaintiff generically concludes that this "major problem" was known to the Police Commissioner and the Mayor, specifically regarding the right to leaflet and express political or religious speech in public forums. *See id.* at ¶¶ 92-94.

In support of these contentions, Plaintiff references a smattering of unrelated arrests which pre-date this incident by well over 10 years, along with his *own* 2014 arrest. Plaintiff also concludes that because his counsel apparently could not find a particular Directive on the PPD website, it does not exist. In reality, however, the Directive in question does exist, is publicly available on the website, and is one of many reasons why the City's Motion should be granted.

## II. STANDARD OF REVIEW

A plaintiff cannot survive a motion to dismiss under Rule 12(b)(6) without pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] Plaintiff also vaguely states he was "dragged across the street," but does not elaborate on this statement or explain what it means, nor does he assert an excessive force claim in connection with any "dragging."

misconduct alleged." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *See id.*  Put differently, while a court should accept the truth of a complaint's factual allegations, it should not credit a plaintiff's "bald assertions" or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

### III.  ARGUMENT

#### A.  Plaintiff's Claims Against the City Fail as a Matter of Law.

Plaintiff asserts a claim against the City for alleged inadequacies in educating and training its police officers regarding the issue of expression in a public forum.  *See* Amended Cmplt. at ¶¶ 91-100 (Count V).  Plaintiff, however, pleads no facts to sustain such a claim here.

The allegations in Count V of Plaintiff's Amended Complaint constitute an attempt to sue the City under *Monell v. Department of Social Services of New York City,* 436 U.S. 658 (1978).  In adjudicating *Monell* claims, "courts have recognized a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom."  *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citations and quotations omitted).  A policy occurs when a decisionmaker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent and well-settled as to virtually constitute law."  *See id.* (citations and quotations omitted).

The Third Circuit has established that for prior incidents to support a *Monell* claim, such prior incidents must have occurred within five (5) years of the incident currently at issue.  *See, e.g., Watson v. Abington Twp.*, 478 F.3d 144, 156-57 (3d Cir. 2007) (incident 5 years before the incident at issue was insufficient to create inference of any municipal custom because the incidents were too remote in time from each other); *abrogated on other grounds, Miles v. Twnship. of*

*Barnegat*, No. 05-1661, 2008 WL 89910 (D.N.J. Jan. 7, 2008); *see also Smith v. City of Phila.,* No. 06-4312, 2009 WL 3353148, at *6 (E.D. Pa. Oct. 19, 2009) (evidence of sheriff's prior criminal convictions from 1995 and 1997 were inadmissible for *Monell* purposes when incident giving rise to lawsuit occurred in 2004, because "the convictions are too remote in time to be relevant in the instant case"); *Doe v. Allegheny Cty.*, No. 10-1761, 2013 WL 1290686, at *12 (W.D. Pa. Mar. 27, 2013).

Here, Plaintiff fails to adequately plead a municipal liability claim for multiple reasons. First, although Plaintiff references a small number of previous cases involving what he characterizes as First Amendment violations by PPD officers, virtually all of these cases involve incidents that occurred before 2010 and are thus *well beyond* the five-year *Monell* lookback period established by the Third Circuit. *See, e.g., Watson*, 478 F.3d at 156-57; *Smith*, 2009 WL 3353148 at *6; *Doe*, 2013 WL 1290686 at *12. Additionally, Plaintiff's assertion that the City fails to employ a Directive that it once did is simply untrue. Indeed, the Directive Plaintiff contends his counsel could not find (former Directive 94) remains very much in effect and on the PPD website. Finally, Plaintiff's only apparent *Monell* claim is for the City's alleged failure to train its employees, which requires Plaintiff to plead facts demonstrating *how* the City's existing training programs are deficient, and which he has simply not done.

    1.    <u>None of the Prior Cases Plaintiff Mentions Can Support a *Monell* Claim.</u>

In his Amended Complaint, Plaintiff references incidents from 1991, 1999, 2004, 2005, 2000, 2001, 2007, 2009. *See* Amended Cmplt. at ¶¶ 55 – 63.[2] Plaintiff's arrest in this case

---

[2] Three of these incidents – the ones in 1999, 2000, and 2001 – were all part of the same case that Plaintiff heavily relies on, *Victory Outreach Center v. Melso*, 313 F. Supp.2d 481 (E.D. Pa. 2004). As noted below, the court in that case *granted* the City's motion for summary judgment because there was no record evidence that the City's First Amendment policies or associated training were deficient or amounted to "deliberate indifference." *See id.* at 494-95.

occurred in December 2019, more than ten (10) years after the most recent of these alleged incidents. Accordingly, none of these incidents can support a claim against the City as they do not even come close to falling within the five-year lookback period for *Monell* liability established in *Watson* and its progeny. *See, e.g., Watson*, 478 F.3d at 156-57; *Smith*, 2009 WL 3353148 at *6; *Doe*, 2013 WL 1290686 at *12.³

The single incident Plaintiff mentions that could plausibly fall within the *Watson* limitation is his own LOVE Park arrest in 2014, which – while technically still more than five years removed from the incident in the instant case – occurred in November 2014. *See id.* at ¶ 64. But it is well-settled that a single prior incident within the requisite time frame does not give rise to a *Monell* case. "A single incident by a lower level employee . . . does not suffice to establish either an official policy or a custom." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989) (emphasis added); *Peters v. Comm. Educ. Ctrs., Inc.*, No. 11-850, 2014 WL 981557, at *7 (E.D. Pa. Mar. 31, 2014) ("[T]wo instances of inappropriate conduct do not establish a custom under *Monell*."); *Foster v. Gray-Harriday*, No. 18-114, 2018 WL 4405883, at *3 (E.D. Pa. Sept. 17, 2018) (rejecting *Monell* claim based on prior incidents because the "single [prior] offense" alleged with requisite specificity was not sufficient to support a claim against the City).

---

³ Plaintiff also mentions that certain of these cases resulted in settlements. Without significantly more, settled lawsuits do "not establish that [the officer's] actions constitute[] a pattern" of violating the constitution. *Pharaoh v. Dewees*, No. 14-3116, 2016 WL 2593842, at *5 (E.D. Pa. May 4, 2016) (rejecting *Monell* claim on basis of prior lawsuits because no facts were adduced as to "whether the municipality's response to the suits could demonstrate deliberate indifference to the risk of future constitutional violations"); *Lemar v. City of Phila.*, No. 14-7102, 2015 WL 4450976, at *6 (E.D. Pa. July 20, 2015) (rejecting *Monell* claim based on lawsuit resulting in settlement agreement and consent decree, because plaintiff could neither show a "continuation" of the alleged training deficiencies or a "convincing nexus between that training and the present harm").

Accordingly, Plaintiff has failed to adequately plead a pattern or custom of violations to support any *Monell* claim.

2.  PPD Directive 3.12 Contains the Same Language as Directive 94 that the Court Approved of in *Victory Outreach Center v. Melso,* and that Plaintiff Argues is Lacking.

Most fervently, Plaintiff hangs his hat on the fact that in 2004, the Eastern District of Pennsylvania *granted summary judgment on behalf of the City* in a case involving an alleged deficiency in First Amendment training, finding that the language of then-Philadelphia Police Directive 94 and the associated training was sufficient to defeat the plaintiff's failure-to-train claim. *See* Amended Cmplt. at ¶¶ 56 – 59; *see also Victory Outreach Center v. Melso*, 313 F. Supp. 2d 481 (E.D. Pa. 2003) (granting City's motion for summary judgment on failure-to-train claim). Plaintiff, however, appears to argue that because his counsel's personal review of the Philadelphia police website did not reveal any similar Directive, that Directive 94 and its teachings have been abandoned, along with any and all associated training. *See id.* As Plaintiff notes:

> A January 7, 2021 review of current Directives being implemented by the Philadelphia Police Dept. does not indicate Directive 94 is still in effect. http://www.phillypolice.com/accountability. There is no Directive 94 listed on the website. Basic Outline of First Amendment Law, materials drafted by the undersigned to educate the Philadelphia Police Department, the contents of which are found in part at 313 F. Supp. At 494, are not found on that website,, and are not being used to educate Philadelphia police on the 1st Amendment, despite the agreement by the city of Philadelphia to do so in *Lickteig v. Landauer*, Civil Action No. 91-1843 (E.D.Pa.). [font adjusted to conform with remainder of Defendants' Memorandum].

As an initial matter, the City is unaware of any viable argument that an attorney's lack of awareness as to a municipality's policies is sufficient to haul that city into court. Or that municipalities are somehow required to list all policies, guidelines, and trainings on their public website. But more importantly, Plaintiff's assertion that the City now fails to employ a First Amendment Directive that it once did is simply untrue. Indeed, the very Directive Plaintiff

contends cannot be located (former Directive 94) remains effective and is indeed publicly available on the PPD website. *See* PPD Directive 3.12 – Processions, Parades, Marches, or Races.[4] Moreover, all the language of former Directive 9.4 that was quoted with approval by the court in *Victory Outreach* is plainly incorporated into Appendix A of Directive 3.12. *Compare Victory Outreach*, 313 F. Supp. 2d, at 494, *with* Exhibit 1 attached hereto, PPD Directive 3.12, Appendix A.

Put differently, Plaintiff's argument that the City is liable for failing to employ a First Amendment policy is facially unsound. Not only is Plaintiff's personal lack of awareness of PPD policies an insufficient basis to sue and obtain discovery from the City, but the very policy Plaintiff believes to be lacking in fact remains in effect, and is readily available on the PPD website.[5]

       3.      <u>Plaintiff Pleads Insufficient Facts to Support a Failure-to-Train Claim</u>

Plaintiff's failure-to-train claim should also be dismissed because the Amended Complaint does not adequately identify prior instances of police misconduct caused by allegedly inadequate training, nor does it plead *how* the City's training is deficient. Although the failure of a municipality to train its employees may support a *Monell* claim, such a theory represents the most "tenuous" sort of municipal liability under § 1983. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). In order to support such a claim, a plaintiff must plead facts to "suggest a pattern of similar constitutional violations by untrained employees." *Williams v. Borough of Sharon Hill*, No. 12-5395, 2013 WL 4743471, at *4 (E.D. Pa. Sept. 4, 2013). Moreover, a plaintiff should

---

[4] Available at http://www.phillypolice.com/assets/directives/D3.12-ProcessionsParadesMarchesOrRaces.pdf

[5] Plaintiff's argument on this score is especially confusing because the Amended Complaint references and summarizes large portions of Directive 3.12. *See* Amended Cmplt. at ¶¶ 53; 92. It thus appears Plaintiff was aware that much of the material quoted by the court in *Victory Outreach* remains in effect, but nonetheless argued the opposite.

plead "*how* the training programs for the [] officers are inadequate." *Torres v. City of Allentown*, No. 07-1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 3008) (granting motion to dismiss failure to train claim when complaint vaguely alleged that defendant municipality "did not require appropriate in-se vice training or re-training of officers who were known to have engaged in police misconduct").

Here, even crediting Plaintiff's allegations that fall outside of the viable *Monell* time-frame, Plaintiff has neither pled adequate facts as to any "pattern of similar constitutional violations" by untrained police officers (i.e. by mentioning what the police officers in the above-referenced cases actually did improperly and how that relates to an absence of training), nor has he attempted to explain *how* the City's existing training programs are deficient. Moreover, Plaintiff has not mentioned a single *fact* as to what has changed since this court previously approved of the City's First Amendment policies and training in *Victory Outreach*.[6] Absent significantly more, Plaintiff has failed to adequately plead this claim.

    4.    <u>Plaintiff's Arguments are not Supported by his own Allegations</u>.

The shotgun nature of Plaintiff's Amended Complaint is evident from internal contradictions that go to the heart of his claim. Plaintiff alleges "[t]here has been no training on rights of free speech in public forum areas given to Philadelphia Police except what is contained in Directive 3.12 except having to do with activity in streets, since 1999." Amended Cmplt. at ¶ 54. Although the City genuinely does not understand what this sentence means, its general

---

[6] The City understands that a 2004 decision finding's the City's policies and training sufficient does not demand a finding here that the City's policies and training in 2019 were likewise sufficient. Such a finding would be preposterous as municipalities could simply cease training their employees upon receiving judicial approval. Here, however, where Plaintiff's *Monell* theory relies so heavily on that 2004 finding – and specifically the notion that PPD has since *ceased* doing the things that the court then approved of (i.e. training) – Plaintiff should be required to assert at least some *facts* as to his basis for that theory (i.e. what has changed). He does not do so.

conclusion – that PPD officers have not received adequate First Amendment training since 1999 – is expressly rejected by the very case Plaintiff discusses at length, *Victory Outreach*, which was not decided until 2004. Pleading in the alternative is permissible; advancing internally inconsistent theories should not be.

### IV.   CONCLUSION

For the reasons set forth above, Plaintiff's claims should be dismissed with prejudice as set forth herein.

Date: February 19, 2021                             Respectfully submitted,

*/s/ Jonathan Cooper*
Jonathan Cooper
Deputy City Solicitor
Pa. Attorney ID No. 316374
City of Philadelphia Law Dep't
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5448 (phone)
jonathan.cooper@phila.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL GRANT,** : | |
| **Plaintiff,** : | |
| : | **Civil Action** |
| v. : | **No. 20-735** |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
| **Defendants.** : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint was filed via the Court's electronic filing system and is available for downloading.

Date:  February 19, 2021    Respectfully submitted,

*/s/ Jonathan Cooper*
Jonathan Cooper
Deputy City Solicitor
Pa. Attorney ID No. 316374
City of Philadelphia Law Dep't
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5448 (phone)
jonathan.cooper@phila.gov