# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL GRANT,** : | |
|        **Plaintiff,** : | |
| : | **Civil Action** |
|        v. : | **No. 20-735** |
| : | |
| **CITY OF PHILADELPHIA, et al.,** : | |
|        **Defendants.** : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The operative pleading in this matter is Plaintiff's Second Amended Complaint, by which he brings claims of (1) false arrest under the Fourth Amendment (Count I); (2) First Amendment violation (Count II); (3) First Amendment retaliation (Count III); (4) Declaratory judgment as to Counts I through III (Count IV); and (5) Municipal liability (Count V). Sec. Am. Compl. ECF No. 55.

### I.  STANDARD OF REVIEW

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. See id. All inferences must be drawn, and all doubts resolved in favor of the non-moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985).

On motion for summary judgment, the moving party bears the initial burden of identifying the portions of the record that it believes demonstrate the absence of material fact disputes. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials. See id. at 321, n.3; First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co., 824 F.2d 277, 282 (3d Cir. 1987).

In a case where the non-moving party is the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." Celotex, 477 U.S. at 322-24. The non-moving party must adduce more than a mere scintilla of evidence in its favor to defeat the moving party's summary judgment motion. See Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989).

Although all justifiable inferences must be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party." Schwartz v. Hospital of Univ. of Pa., 1993 WL 153810 at *2 (E.D. Pa. May 7, 1993). Furthermore, "[p]laintiff cannot 'simply reassert factually unsupported allegations in its pleadings.'" Poles v. St. Joseph's Univ., 1995 WL 542246 at *5 (E.D. Pa. Sept. 11, 1995) (citing Celotex, 477 U.S. at 325). "Plaintiff must present affirmative evidence in order to defeat this properly supported motion for judgment." Id.

## II.     FACTUAL SUMMARY

Plaintiff, Michael Grant, also known as Philly Jesus, was issued a Code Violation Notice (CVN) on December 21, 2019 in Love Park during the Christmas Village. Grant Dep. 13:7-11;

52:17-22, Ex. A. Plaintiff was located approximately ten feet away from the Love sign. Id at 21:10-14. Plaintiff was initially alone but would be accompanied by friends and associates at various times through the night, and at one point was accompanied by two individuals. Id at 29:19-30:19. Plaintiff was surrounded by Christmas Village booths and was approximately seven to ten feet away from the closest booths, which were selling hot wine and Christmas ornaments. Id at 23:14-17; 24:8-15.

Officers Moffit and Sauris were the only two police officers assigned to the event, and as such it was their sole responsibility to control the crowd of hundreds of people. Sauris Dep. at 46:1-4, Ex. H. Plaintiff was speaking by the Love sign with a raised voice. Grant Dep. 31:14-22, Ex. A. Plaintiff's appearance as Philly Jesus elicited various reactions from vendors in the area, who did not know how to react to him. Id at 27:14-21. Some of the vendors did not want Plaintiff to be near them and called him a troublemaker. Grant Dep. 28:3-14, Ex. A. Some of the tourists that came to Christmas Village believed Plaintiff was crazy. Id. Plaintiff's loud volume was drawing attention from the families attending the Christmas Village. Moffit Dep. 55:24-56:10, Ex. I.

Plaintiff had a collection plate at his feet while he was speaking loudly and he had collected fifty to seventy dollars as of the time of the incident via donations and tips. Grant Dep. at 33:3-4; 35:23-36:5, Ex. A. Plaintiff also had a sign with him. Id at 18:13-15.

The night of the incident was four days before the Christmas holiday. *See* CVN, Ex. B That night there were, "men, women, and children all around enjoying the Christmas Village." Grant Dep. 42:2-3, Ex. A. It was "very, very busy" with "a lot of people around." Moffitt Dep. 44:8-21, Ex. I. Specifically, the area where Plaintiff was speaking loudly was crowded, with little space for people to walk to get around Plaintiff. Id at 74:3-8. Plaintiff was blocking the entrance

to vendor huts, causing people to go around. Sauris Dep. 7: 11, 44:8-21, Ex. H. Moffitt Dep. 9:1-8.

Plaintiff alleges that he was approached by Officer Sauris, who read the sign at Plaintiff's feet with "his face scrunched up in disgust" and told Plaintiff he had to leave the park. Grant Dep. 39:8-1, Ex. A. Officer Sauris did not give a reason for telling Plaintiff to leave the park but said, "I'm just doing my job, you know?" Id at 40:1-5. Plaintiff further alleges that Officer Sauris was calling him names such as "con artist." Id at 41:2-3.

Plaintiff refused to leave and was eventually placed in handcuffs by both officers. Id at 41:20-42-1, 42:9-10. Defendant officers dragged Plaintiff about thirty feet to the outside edge of Love Park. Id at 49:17-20. They brought Plaintiff's basket and sign over to where he was being detained. Id at 54:15-19. The officers then called Plaintiff's name over their radio to check whether there were any warrants for his arrest. Id at 50:21-51:2. After they confirmed he had no warrants, they told him he was not going to jail but was going to receive a citation. Id at 52:8-14. The officers told him not to go back to the spot he had just been removed from. Id. The officers gave Plaintiff a citation, which he immediately crumpled in their face and threw in the trash. Id at 52:17-22. Plaintiff immediately returned to the spot that he had just left. Id.

When the officers attempted to handcuff Plaintiff after he refused to cease the violative activity, Plaintiff became disruptive including climbing on top of a bench and swinging his staff. Sauris Dep. 29:6-11, Ex. H. Plaintiff then threw himself on the ground and resisted being handcuffed by trying to cause a scene and holding his body down to the ground. Moffitt Dep. 58:21-3, 60:9-21, 79:10-20, Ex. I. Plaintiff refused to move his feet in a walking motion to comply with the Officers during the investigatory detention as they moved him to a less crowded section of Love Park. Id at 61:3-9.

Philadelphia police recruits receive training through the police academy on the constitution, bill of rights, and First Amendment. <u>Basic Recruit Curriculum,</u> Ex. D; <u>Lesson Plan on Civil and Criminal Liability</u>, Ex. E; <u>U.S. Constitution Center Trip</u>, Ex. F. Philadelphia police officers receive ongoing training on the First Amendment. MPOETC, Ex. G.

**III. ARGUMENT**

   **A. Probable Cause Existed For Plaintiff's Arrest, Therefore his False Arrest Claim, First Amendment Retaliation Claim, and Municipal Liability Claim fail.**

The Fourth Amendment protects individuals against unreasonable searches and seizures, and includes a right to be free from false arrest. <u>U.S. Const. Amend. IV</u>. While the existence of probable cause is generally a jury question, it may be appropriate for summary judgment where "the uncontroverted facts could not lead a reasonable person to find that probable cause was lacking." <u>Telepo v. Palmer Township</u>, 40 F. Supp.2d 596, 611 (E.D. Pa. 1999); <u>accord</u> <u>Dreary v. Three Un-named Police Officers</u>, 746 F.2d 185, 192 (3d Cir. 1984) (holding that a probable cause determination is appropriate for summary judgment where there are no genuine issues of material fact and no credibility issues).

The determination whether probable cause to arrest exists is a factual analysis that must be performed by the officers at the scene. <u>Sharrar v. Felsing</u>, 128 F.2d at 818 (3d Cir. 1997). Obviously, it is neither feasible nor desirable for officers on the street to take it upon themselves to conduct a trial on the spot to establish guilt or innocence. See <u>Morrison v. United States,</u> 491 F.2d 344, 346 (8th Cir. 1974) ("there is no constitutional or statutory requirement that before an arrest can be made the officer must conduct a trial"). Instead, the Fourth Amendment provides that a seizure is not unlawful if it is based upon probable cause.

As has been long recognized – and correctly observed by the Federal Court – "it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with" because

"[p]robable cause need only exist as to any offense that could be charged under the circumstances." Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005) (citing Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). The U.S. Supreme Court has also instructed that "the rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest is inconsistent with the Court's precedent, which holds that an arresting officer's state of mind (except for facts that he knows) is irrelevant to probable cause." Devenpeck v. Alford, 543 U.S. 146, 154 (2004) (citing Whren v. United States, 517 U.S. 806, 812-15).

The undisputed facts of record demonstrate that Defendant officers had probable cause to believe that Plaintiff was committing several offenses against Pennsylvania law and the Philadelphia City Ordinance, including disorderly conduct, noise violations, failure to disperse, solicitation within eight feet of a vendor, and obstruction of public sidewalks.

First, under Pennsylvania law, disorderly conduct exists if an individual, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," engages in "tumultuous behavior," "makes unreasonable noise," or creates a "physically offensive condition." See 18 PA. CONS. STAT. § 5503. If an officer has probable cause to believe that an individual has committed disorderly conduct, then that individual cannot sue the officer for false imprisonment or false arrest. See Spiker v. Whittaker, 553 F. App'x 275, 278 (3d Cir. 2014); see also Manley v. Fitzgerald, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010) (holding same for equivalent state-law claims of false arrest and false imprisonment).

Second, Philadelphia City Ordinance Code § 10-404 empowers the Police Department to issue a code violation notice (CVN) "in order to prevent, restrain or abate noise or excessive vibration prohibited by this Chapter or Regulations adopted hereunder, or the violation of the

provisions of any order made under § 10-409 in order to which tend to cause discomfort, disruption, or annoyance to observers and participants during parades or other public events within the City." PHILA., PA., CODE §§ 10-404, 10-409 (2020), Ex. D. Philadelphia City Ordinance Code § 10-611 et seq. govern sidewalk behavior and prohibit certain types of panhandling, obstruction of public sidewalks and highways, and aggressive solicitation. Id. § 10-615(2)(b) prohibits failure to disperse, defined as "Where three or more persons are engaged in a course of disorderly conduct in a public place which causes or may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm and a police officer or other person authorized to enforce ordinances has ordered the participants and other persons in the immediate vicinity to disperse, no person shall refuse or knowingly fail to obey such an order." Id. § 10-611(4)(b) prohibits solicitation within eight feet of a vending cart: "No person shall: … Solicit money for any purpose on the public sidewalk in any manner, within an eight foot (8') radius of any building entrance, or within an eight foot (8') radius of any vending cart." Id. The City Ordinance prohibits obstruction of public sidewalks by prohibiting an individual to, "Sit, stand, lie or otherwise use the public sidewalk, or place one's belongings or other objects upon the public sidewalk, in such manner as to unreasonably and significantly impede or obstruct the free passage of pedestrians." Id at (2)(l).

The undisputed factual record shows that Plaintiff was ten feet away from the Love sign in Love Park on the night of the arrest. Grant Dep. 21:10-14, Ex. A. That night there were, "men, women, and children all around enjoying the Christmas Village. Id at 42:2-3. Plaintiff was initially alone but would be accompanied by friends and associates at various times through the night, and at one point was accompanied by two individuals. Id at 29:19-30:19. Plaintiff was surrounded by Christmas Village booths and was approximately seven to ten feet away from the closest booths, which were selling hot wine and Christmas ornaments. Id at 23:14-17; 24:8-15. Plaintiff was

speaking with a raised voice. Id at 31:14-22. Some of the vendors did not want Plaintiff to be near them and called him a troublemaker. Id at 28:3-14. Some of the tourists that came to Christmas Village believed Plaintiff was crazy. Id. Plaintiff had a collection plate at his feet while he was speaking loudly and he had collected fifty to seventy dollars as of the time of the incident via donations and tips. Id at 33:3-4; 35:23-36:5.

Additionally, Defendant officers both testified that Plaintiff was yelling loudly. Moffit Dep. 45:6-11, 55:21-56:2, Ex. I; Sauris Dep. 30:2-6, 31:24-32:1, 51:11-18, Ex. H. Plaintiff's loud volume was drawing attention from the families attending the Christmas Village. Moffit Dep. 55:24-56:10, Ex. I. Officer Moffit approached Plaintiff because he was standing in the middle of the Christmas Village – an area full of a "bunch of families and children" – yelling and holding a stick, in addition to having collection plate out in front of him. Id at 17:15-24. Officer Moffit believed Plaintiff's actions of screaming and bothering patrons was disruptive to the businesses. Id at 44:22-45:23. Plaintiff's loud volume was violative of Pennsylvania law against disorderly conduct and the Philadelphia City Code's prohibition on noise violations. See 18 PA. CONS. STAT. § 5503; PHILA., PA., CODE § 10-404, Ex. C.

On the night of the incident, Christmas Village was "very, very busy" with "a lot of people around." Moffitt Dep. at 44:8-21, Ex. I. Specifically, the area where Plaintiff was yelling was crowded, with little space for people to walk around Plaintiff. Moffitt Dep. 74:3-8, Ex. I. Plaintiff's panhandling was blocking the entrance to vendors, causing people to go around. Sauris Dep. 44:8-21, Ex. H. Plaintiff was clearly in violation of the City Code's provision regarding obstruction of public sidewalks. PHILA., PA., CODE § 10-611, Ex. C. Furthermore, Plaintiff had a collection plate at his feet while he was yelling loudly and had collected fifty to seventy dollars as of the time of the incident via solicitation. Grant Dep. 33:3-4, Ex. A. Moffitt Dep. 49:15-17, 72:10-14, Ex. I.

Plaintiff was surrounded by Christmas Village booths and was approximately three to ten feet away from the closest booth. Moffit Dep. at 37:3-13, Ex. I; Grant Dep. at 23:14-17, Ex. A. Therefore, Defendants had probable cause to believe that Plaintiff was violating the City Code's prohibition against solicitation within eight feet of a vendor. PHILA., PA., CODE § 10-611(4)(b), Ex. C.

Finally, Defendant officers had probable cause to believe that Plaintiff was violating the City Code regarding failure to disperse because there were two people assisting him and he refused to disperse after an order from police. Id at § 10-615(2)(b). Plaintiff was accompanied by two individuals who were assisting him at Love Park. Moffit Dep. 9:4-6, 40:11-41:19, Ex. I; Grant Dep. 30:5-19, Ex. A. Defendants asked Plaintiff to move twenty-five to thirty feet away to the edge of the park where he could continue his activities out of the way of the heavy Christmas Village traffic, but Plaintiff refused. Sauris Dep. 57:17-20, 63:14-64:11, Ex. H.

Therefore, Plaintiff's claims for false arrest, first amendment retaliation, and municipal liability fail and Defendants are entitled to summary judgment a matter of law.

**B. Plaintiff's First Amendment Violation Claim and First Amendment Retaliation Claim Fail Because Defendants did not Take Action Based Solely on the Content of Plaintiff's Speech.**

Plaintiff complains that the Defendant officers violated his First Amendment rights. Sec. Am. Compl. ECF no. 55 ¶¶ 95-108. But the record is devoid of evidence that the officers took action against the Plaintiff because of the content of his speech.

The Court should grant summary judgment against such a claim if an officer "would have undertaken the action complained of" regardless of the litigant's speech. Bergdoll v. City of York, 515 F. App'x 165,169-170 (3d Cir. 2013). In other words, a complainant must "show that [his] speech was the but-for cause of [his] arrest." Id. at 170. Here, as in Bergdoll, there is no evidence

in the record which indicates that it was the content of Plaintiff's speech, rather than his unwillingness to move to a less crowded area of Love Park to stop disturbing patrons, which lead to his brief detention and the issuance of a CVN.

Even liberally construing the record in a light most favorable to the Plaintiff, the most Plaintiff can point to regarding content-based action is that Officer Sauris read Plaintiff's sign, "with his face scrunched up in disgust," and called him "a con artist." Grant Dep. 39:8-11; 41:2-3, Ex. A. Upon consideration of the totality of the record, Plaintiff's claims fall woefully short of proving that either officer took action against him solely because of the content of his speech. On the contrary, both officers testified that they did not even know what Plaintiff was saying and could not remember what his sign said. Moffitt Dep. 9:1-8, 10:21-11:5, Ex. I; Sauris Dep. 7:11-13, 8:24-9:2, Ex. H. Therefore, both of Plaintiff's First Amendment claims fail as a matter of law and summary judgment is appropriate.

**C. Defendant Officers Are Entitled to Qualified Immunity.**

Qualified immunity protects the Defendants from liability for false arrest and Plaintiff's First Amendment claims. Qualified immunity shields officers from liability unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct." See George v. Rehiel, 738 F.3d 562, 572 (3d Cir. 2013) (internal quotations omitted). A right only qualifies as clearly established if its "contours . . . are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." See Ashcroft v. Al-Kidd, 131 S. Ct. 2074, 2078 (2011) (citations and quotations omitted) (emphasis added).

The Defendant officers also enjoy qualified immunity from Plaintiff's First Amendment claims because probable cause existed for his arrest. In Primrose v. Mellott, the Third Circuit held

that it is not clearly established that an arrest supported by probable cause can give rise to a First Amendment violation. 541 F. App'x 177, 180 n.2 (3d Cir. 2013). Given such a legal landscape, the Defendants enjoy qualified immunity from Plaintiff's First Amendment retaliation claim. See id.; see also Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) ("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause.").

**D. Summary Judgment is Appropriate for Count III Because Plaintiff has Failed to Establish that the City Ordinance Violates the First, Fourth, or Fourteenth Amendment.**

Declaratory judgments may fit into either a legal or equitable framework depending upon the nature of the dispute underlying the claim and whether Plaintiff has an adequate remedy at law. Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1189 (3d Cir. 1979). At the outset, it is unclear whether the Plaintiff brings this claim in law or equity. Plaintiff challenges an alleged ban on solicitation in Christmas Village as overbroad. Sec. Am. Compl. ECF No. 55 at ¶¶ 109-112. However, Plaintiff has failed to establish that there was in fact a ban on solicitation or leafletting in Christmas Village and further failed to prove, through record evidence, that he was constitutionally injured by such an alleged ban. Specifically, Plaintiff has failed to demonstrate how his First, Fourth, or Fourteenth Amendment rights were violated by the alleged ban.

Plaintiff cannot make out this claim because there was no ban on soliciting at the Christmas Village on the date Plaintiff was issued a CVN. Plaintiff testified that he did not remember there being a sign at Love Park in 2019 banning soliciting. Grant Depo. 37:15-23, Ex. A. Plaintiff further testified that on the date in question, he was not soliciting. Id at 37:22-23. Furthermore, Plaintiff denied that he was leafletting that day. Id 36:11-24; 37:1. Plaintiff further failed to establish that he is in any way injured from the alleged ban because he stated he is comfortable returning to Love Park as Philly Jesus. Id at 56:11-15.

As a result of the factual deficiencies in the record, summary judgment is appropriate on Count IV, which seeks declaratory judgment against Defendants for violations of Plaintiffs First, Fourth, and Fourteenth Amendment rights.

**E. The City is Entitled to Summary Judgment Because Plaintiff Has Both Failed to Produce Evidence a Constitutional Violation and Failed to Prove the City is the Cause of Any Injury Suffered.**

Plaintiff brings a claim against the City for an unconstitutional failure to train its employees on the First Amendment. Sec. Am. Compl. ECF no. 55 ¶¶ 113-122. By doing so, Plaintiff alleges that the City's training on First Amendment issues is constitutionally insufficient. Id. However, Plaintiff failed to adduce evidence of record to support either the notion that he was constitutionally harmed or that the City was the moving force behind such an injury.

To prevail on a claim under 42 U.S.C. § 1983 against the City, Plaintiff must adduce sufficient facts to establish that (1) a constitutionally protected right has been violated; and (2) the alleged violation resulted from a municipal policy, custom or practice of deliberate indifference to rights of citizens. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694-95 (1978); Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). Monell liability must be founded upon evidence that the government unit itself supported a violation of constitutional rights, while identifying the policymaker and establishing his/her deliberate indifference. Bielevicz v. Dubinon, 915 F.2d 845, 849-50 (3d Cir. 1990).

Monell liability must be founded upon evidence that the government unit itself supported a violation of constitutional rights, while identifying the policymaker and establishing his/her deliberate indifference. Bielevicz v. Dubinon, 915 F.2d 845, 849-50 (3d Cir. 1990). Proof of a single incident or unconstitutional activity is not sufficient to impose liability under Monell. Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). To adequately plead a failure to train or

discipline claim, the plaintiff must show that the city's failure amounted to 'deliberate indifference to the rights of persons with whom the police come into contact.'" McDaniels v. City of Philadelphia, 234F.Supp.3d 637, 645 (E.D. Penn. 2017). Although the failure of a municipality to train its employees may support a Monell claim, such a theory represents the most "tenuous" sort of municipal liability under § 1983. *See* Connick v. Thompson, 563 U.S. 51, 60 (2011). For "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id. at 62.

Plaintiff has failed to establish that his First Amendment right has been violated and therefore summary judgment is appropriate with respect to this claim. As argued in more detail above, Plaintiff has failed to establish that the municipal actors, defendant police officers, lacked probable cause to detain him in violation of the Fourth Amendment. Furthermore, Plaintiff has failed to prove that by detaining him, the officers took action solely based upon the content of Plaintiff's speech. Therefore, there is no evidence that Plaintiff's First Amendment rights were violated. Therefore, summary judgment is appropriate on Plaintiff's municipal liability claim without further analysis.

Even were the Court to consider the substantive merits of this claim, Plaintiff has failed to establish, through record evidence, that the violation resulted from a municipal policy, custom or practice of deliberate indifference to rights of citizens. Plaintiff alleges that the City's training on First Amendment issues is constitutionally insufficient. Sec. Am. Compl. ECF No. 55 at ¶¶ 113-122.  However, record evidence indicates that all police cadets receive ample training on the First Amendment.

Here, Plaintiff failed to establish any facts that would suggest a pattern of unconstitutional conduct by untrained employees. Rather, Plaintiff relies wholly on unsubstantiated and conclusory allegations, which are insufficient to state a failure-to-train claim. Such factual deficiencies necessitate the dismissal of Plaintiff's Monell claim against the City. Plaintiff alleges that "there is a major problem with training on the First Amendment of the Philadelphia Police, in that the only training received is Directive 3.12 and other materials but little or no specific guidelines to help police make decisions[sic] what to do when there is protected expressive activity going on in public forum areas in Philadelphia." Sec. Am. Compl. ECF No. 55 ¶ 114.

The record evidence completely contradicts Plaintiff's claim. Defendants have produced the training curricula for new police recruits, which includes an overview on constitutional law, a lesson plan on Civil and Criminal liability, Philadelphia Police Directive 3.12 with subject: Processions, Parades, Marches, or Races, a lesson plan for the U.S. Constitution Center Trip, Commonwealth of Pennsylvania Municipal Police Officers' Education and Training Commission Basic Municipal Police Officer' Curriculum. Ex. D-G; K.

On April 27, 2022 Plaintiff had the opportunity to depose Lieutenant Kenneth Kimchuck, as the Philadelphia Police Department's designee under Fed. Rule Civ. Pro. 30(b)(6). Lieutenant Kimchuck testified that an appropriate search for records related to First Amendment training was conducted by the Police Department in response to Plaintiff's requests. Kimchuck Dep. 11:9-14. The City produced documents of comprehensive First Amendment training, which is provided to both new police recruits as well as active police officers. Therefore, Plaintiff's injury, if any, is not the result of a municipal policy, practice or custom. See id.

Plaintiff has failed to demonstrate through record evidence that he has a viable claim against the City of Philadelphia such that a reasonable jury could find in his favor. Plaintiff has

failed to establish that he suffered a constitutional injury pursuant to the First Amendment. He has further failed to demonstrate that any alleged constitutional injury was the result of a municipal policy, practice, or custom. Therefore, summary judgment is appropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendants request that the Court grant their motion for summary judgment and enter judgment in their favor, and against Plaintiff, as to all claims.

Date: May 12, 2022

Respectfully submitted,

/s/ Kathryn Faris
Kathryn Faris
Deputy City Solicitor
Pa. Attorney ID No. 318580
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5445 (phone)
215-683-5397 (fax)
Kathryn.faris@phila.gov